791 P.2d 659

**Hubert Franklin LINDLEY, Jr., widower of Carla Lynn Lindley, Deceased, for and on behalf of himself and Joanna Griffin, Mother of the deceased, for and on behalf of herself and as Conservator and Personal Representative for and on behalf of Melanie Ann Kerr and Lawrence Kerr, Plaintiffs/Appellants,**

v.

**NORTHWEST HOSPITAL & MEDICAL CENTER, INC., an Arizona corporation; Dr. Bruce Adams, Defendants/Appellees.**

No. 2 CA–CV 89–0251.

Court of Appeals of Arizona, Division 2, Department B.

April 26, 1990.

Harold Hyams & Associates, P.C. by Harold Hyams, Tucson, for plaintiffs/appellants.

Chandler, Tullar, Udall & Redhair by D.B. Udall, Tucson, for defendants/appellees.

## OPINION

LACAGNINA, Judge.

The survivors of a decedent, in a wrongful death action based on a physician's mal-

practice, appeal from an adverse jury verdict and denial of their motion for new trial, raising a number of issues concerning the rulings of the trial court. We reverse the judgment of the trial court and remand for new trial on only one of the issues raised and decline to render an opinion on the other issues, which depend on the manner in which evidence is presented upon retrial.

■ The survivors argue that the trial court committed error by refusing to strike one of the prospective jurors for cause. *See* Ariz.R.Civ.P. 47(c)(4) and (5), 16 A.R.S. The right of a party to peremptory challenges is a substantial right, and forcing a party to use his peremptory challenges to strike jurors who should have been stricken for cause deprives that party of a substantial right and is grounds for reversal. *Wasko v. Frankel,* 116 Ariz. 288, 569 P.2d 230 (1977). Whether a challenge is allowed or not is within the sound judicial discretion of the trial court. Our examination of the record discloses an abuse of the trial court's discretion in its refusal to strike one of the jurors for cause.

■ The juror in question was a recent patient of a physician to be called as an expert on behalf of the defendant doctor. The expert's testimony was one of many opinions to be offered by experts called by both parties, and the basic issue of malpractice and causation was largely dependent upon the opinions of experts. Upon examination by the court, the juror stated the following:

PROSPECTIVE JUROR SHARP: Dr. Dunn just did some surgery on me about a month ago.

THE COURT: Okay. Ms. Sharp, Dr. Dunn will be—is expected to be called as a witness on behalf of the defendants. In other words, the plaintiffs may call witnesses and then the defendants may call witnesses, and Dr. Dunn has been listed as a witness the defendants will call.

Would you, because of having treatment with Dr. Dunn, favor his testimony over the testimony of some other doctor called by the plaintiff who might have a different opinion than Dr. Dunn?

PROSPECTIVE JUROR SHARP: I have a great deal of respect for Dr. Dunn, so I'm afraid that I might be more biased towards what he says.

THE COURT: All right. You would be instructed by the Court at the conclusion of the trial that as a juror you are to determine the credibility of witnesses and give their opinions weight based upon a standard that applies.

If you are sworn as a juror to apply that standard to all of the witnesses would you think that you would be able to do that?

PROSPECTIVE JUROR SHARP: I believe so.

THE COURT: You would be able to weigh his testimony in light of all of the evidence in the case?

PROSPECTIVE JUROR SHARP: I believe so.

THE COURT: And you think that you could be fair and impartial even though—to both sides notwithstanding that you have been treated very satisfactorily with Dr. Dunn?

PROSPECTIVE JUROR SHARP: I believe so.

THE COURT: Thank you.

Subsequently, plaintiffs' counsel questioned Prospective Juror Sharp as follows:

MR. HYAMS: You indicated that Dr. Dunn was one—was a doctor who you respect and who recently performed surgery on you?

PROSPECTIVE JUROR SHARP: Yes.

MR. HYAMS: And obviously you were satisfied with Dr. Dunn's results?

PROSPECTIVE JUROR SHARP: Yes.

MR. HYAMS: Now, if Dr. Dunn is to lock heads, in other words, come out with a different opinion as someone else and you decide based on what he says and what the other doctor said who to believe, *would there be some tendency for you to favor Dr. Dunn because of the fact that he was your doctor who cared for you at the time of surgery and also thereafter?*

PROSPECTIVE JUROR SHARP: It's hard to say not faced with it. *I think that there might be a tendency to do that, yes.*

MR. HYAMS: So there would be some subliminal factors that you feel would influence you if you have to weigh the testimony between Dr. Dunn and some other doctor in leaning towards Dr. Dunn?

PROSPECTIVE JUROR SHARP: *Yes. I think if they both make good sense to me and [are] logical, then I would probably have a tendency to lean that direction.* If the doctor—other doctor is more logical and makes more sense, then I would probably go that way.

(Emphasis added).

The juror in question clearly indicated her bias in favor of Dr. Dunn and her tendency to lean toward and give more weight to his opinion when opposed to another's equally logical and sensible opinion. Her reason for doing so was her relationship with the doctor who had recently performed satisfactory surgery on her. Her answers to the general questions of the court, which indicated she would be fair to both sides, are insufficient when weighed with her specific answers about her bias and leaning toward the opinion of her personal physician, and she should have been stricken for cause.

We adopt the reasoning of *Jenkins v. Parrish*, 627 P.2d 533, 536 (Utah 1981), to support our finding:

> This examination clearly discloses that Mrs. Eddins would credit the doctor's testimony to an undue extent. Even though the juror conceded that if the doctor's testimony was not in accord with the evidence, she would accept the other evidence, that does not obviate the prejudice. *The overriding question is the credibility she would accord the doctor's testimony in the first instance. Also, who can say how strong or persuasive the contradictory evidence would have to be for her to accept it?*

\*    \*    \*    \*    \*    \*

Although Mrs. Eddins expressed a desire and ability to remain fair and impartial once all the evidence was presented, her statements do not alter the fact that she indicated that her background would cause her to place greater credence in a doctor's testimony simply because of his status as a doctor. A statement by a juror that she intends to be fair and impartial loses much of its meaning in light of other testimony and facts which suggest a bias.

(Emphasis added). *See also Lambert v. Sisters of St. Joseph of Peace*, 277 Or. 223, 560 P.2d 262, 266 (1977).

We reverse the judgment of the trial court and its denial of the motion for new trial and remand for proceedings consistent with this opinion.

LIVERMORE, P.J., concurs.

FERNANDEZ, Judge, dissenting.

I respectfully dissent. Although the issue raises a close question, the transcript shows that the prospective juror stated she could be fair and impartial to both sides despite her positive experience with Dr. Dunn. In situations like this, I would defer to the experienced trial judge who had the opportunity to observe her demeanor during voir dire.